Matter of Mills v New York State Bd. of Parole (2024 NY Slip Op 00661)

Matter of Mills v New York State Bd. of Parole

2024 NY Slip Op 00661

Decided on February 8, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 8, 2024

CV-22-1888
[*1]In the Matter of Richard Mills, Appellant,
v
New York State Board of Parole et al., Respondents.

Calendar Date:January 16, 2024

Before:Garry, P.J., Egan Jr., Aarons, Reynolds Fitzgerald and McShan, JJ.

Richard Mills, Attica, appellant pro se.
Letitia James, Attorney General, Albany (Frank Brady of counsel), for respondents.

Egan Jr., J.
Appeal from a judgment of the Supreme Court (Patrick J. McGrath, J.), entered September 21, 2022 in Albany County, which, among other things, dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Board of Parole denying petitioner's request for parole release.
Following a standoff with police officers who responded to a 911 call in December 2001, during which petitioner fired a rifle in the direction of the officers, petitioner in 2002 waived indictment and pleaded guilty pursuant to a superior court information (hereinafter SCI) to attempted murder in the second degree and criminal possession of marihuana in the second degree, and was sentenced, respectively, to concurrent prison terms of 10 years, followed by five years of postrelease supervision (hereinafter PRS), and 2&frac13; to 7 years. In 2003, petitioner's motion to vacate the judgment of conviction was granted because County Court lacked authority at that time to accept a waiver of indictment where the felony complaint charged a class A felony and, consequently, the SCI was dismissed and the waiver of indictment was vacated, with leave to re-present the charges to a grand jury (see CPL former 195.10 [1] [b]). Defendant was thereafter indicted on charges stemming from the 2001 incident and, following a jury trial, he was convicted of attempted murder in the first degree, attempted assault in the first degree, reckless endangerment in the first degree, two counts of criminal possession of a weapon in the third degree and criminal possession of marihuana in the third degree.[FN1] He was sentenced by County Court, Genesee County (Noonan, J.) in 2004 to a prison term of 20 years to life for the attempted murder in the first degree conviction, to run concurrently with a 15-year prison term for attempted assault in the first degree, and to the following lesser prison sentences, to run concurrently with the foregoing sentences but consecutively to one another: 2&frac13; to 7 years for reckless endangerment in the first degree, 2&frac13; to 7 years on each count of criminal possession of a weapon in the third degree and 1&frac13; to 4 years for criminal possession of marihuana in the third degree (see People v Mills, 28 AD3d 1156, 1157 [4th Dept 2006], lv dismissed 6 NY3d 896 [2006], lv denied 7 NY3d 903 [2006]).
In 2011, because County Court in imposing the 2004 determinate sentence for attempted assault in the first degree did not impose a period of PRS, petitioner was resentenced on that conviction, by order of County Court, upon consent, to the same 15-year prison term without a period of PRS (see Correction Law § 601-d; Penal Law §§ 70.45 [1]; 70.85), and the other sentences imposed in 2004 "remain[ed] as originally imposed." In 2019, petitioner appeared in County Court (Church, J.) and was again resentenced in person, upon his conviction for attempted assault in the first degree, to a 15-year prison term without a period of PRS, and the court issued a sentence [*2]and commitment order (hereinafter the 2019 sentence and commitment order) imposing that sentence as well as all of the other sentences originally imposed in 2004. In 2021, petitioner's marihuana conviction was administratively vacated and expunged (see CPL 440.46-a; see also CPL 160.50 [3] [k]; [5]) and his subsequent postjudgment motion to vacate that marihuana conviction was granted by order of County Court, which denied his further motion to vacate the entire indictment and all convictions thereunder (see CPL 440.46-a [4] [e]).
Respondent Department of Corrections and Community Supervision (hereinafter DOCCS) later calculated petitioner's parole eligibility date to be December 16, 2021. In September 2021, petitioner waived his right to appear when respondent Board of Parole undertook its initial consideration of him for discretionary release and, after a hearing, the Board concluded that release would not be appropriate and ordered that petitioner be held for an additional 24 months. That determination was upheld upon an administrative appeal, prompting petitioner to commence this CPLR article 78 proceeding against both the Board and DOCCS seeking, among other relief, to annul the Board's determination and DOCCS's calculation of his parole eligibility date.
After respondents filed an answer, petitioner filed a motion seeking various relief, including sanctions against respondents for including in his parole file the records related to his expunged marihuana conviction, and requested disclosure of certain documents considered by the Board in camera. Supreme Court dismissed the petition, finding in a thorough written decision, among other things, that DOCCS had correctly calculated petitioner's parole eligibility date and that the Board's denial of discretionary parole release complied with the statutory requirements. The court denied petitioner's motion for additional relief with one exception, granting him additional time to file a reply. Petitioner appeals.[FN2]
We affirm. Petitioner argues that the Board lacked the authority to consider him for discretionary parole release. He does not dispute that, pursuant to the 2019 sentence and commitment order, his maximum aggregate sentence is, by operation of law, 20 years to life (see Penal Law § 70.30 [1] [a]). Petitioner's claim is that DOCCS improperly implemented County Court's 2019 sentence and commitment order, premised on the argument that the court, in resentencing him in 2019 [FN3] to a determinate sentence on the attempted assault conviction without PRS, did not orally pronounce the remaining sentences. Thus, he argues, the 2019 sentence and commitment order is a nullity as to the other sentences and the Board had no authority to consider him for discretionary parole based on the determinate sentence imposed (see Penal Law § 70.40 [1] [a] [ii]). However, DOCCS is "conclusively bound" to follow that sentence and commitment order (Matter of Murray v Goord, 1 NY3d 29, 32 [2003] [internal quotation marks[*3], emphasis and citation omitted]; see Matter of Hunt v Annucci, 201 AD3d 1112, 1113 [3d Dept 2022], lv denied 38 NY3d 907 [2022]). Moreover, as Supreme Court recognized, any contention that the sentence and commitment order does not accurately reflect the resentence imposed by the court in 2019, and any request to change the sentence and commitment order, must be pursued in a proceeding in the sentencing court and not in this CPLR article 78 proceeding (see Matter of Olutosin v Annucci, 174 AD3d 1262, 1264 [3d Dept 2019], lv denied 34 NY3d 908 [2020]; see also People ex rel. Jackson v Superintendent of Elmira Corr. Facility, 199 AD3d 1153, 1154-1155 [3d Dept 2021]).[FN4]
Turning to the merits of the Board's denial of parole, "[i]t is well settled that parole release decisions are discretionary and will not be disturbed as long as the Board complied with the statutory requirements set forth in Executive Law § 259-i" (Matter of Hibbert v New York State Div. of Parole, 219 AD3d 1038, 1039 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]). By statute, the Board must consider whether, if released, there is a reasonable possibility that the incarcerated individual "will live and remain at liberty without violating the law" and whether such release is
"[ ]compatible with the welfare of society and will not so deprecate the seriousness of [the] crime as to undermine respect for law" (Executive Law § 259-i [2] [c] [A]). In addition, "the Board must consider, among other statutory factors, the incarcerated individual's institutional record — including program goals and accomplishments, academic achievements, vocational education and training and work assignments — as well as the individual's postrelease plans, the seriousness of the underlying offense[s], the individual's prior criminal record and the COMPAS Risk and Needs Assessment instrument" (Matter of Hibbert v New York State Div. of Parole, 219 AD3d at 1039-1040 [internal quotation marks, brackets, ellipsis and citation omitted]; see Executive Law §§ 259-i [2] [c] [A]; 259-c [3], [4]; 9 NYCRR 8002.2 [d]). Moreover, "the Board is not required to give equal weight to — or expressly discuss — each of the statutory factors" (Matter of Hibbert v New York State Div. of Parole, 219 AD3d at 1040 [internal quotation marks, brackets and citations omitted]).
Contrary to petitioner's claim, the record reflects that the Board considered the relevant statutory factors in reaching its determination, including the gravity of his crimes, all of the relevant sentencing minutes, his criminal record and prison disciplinary history as well as his 2002 presentence report (hereinafter PSR)[FN5] (see Executive Law § 259-i [2] [c] [A]; 9 NYCRR 8002.2). Additionally, the Board considered his postrelease plans, program and educational accomplishments and refusal to participate in several programs, and his refusal to participate in the COMPAS Risk and Needs Assessment interview, which resulted in an incomplete [*4]COMPAS instrument (see Matter of Pulliam v Board of Parole-Dept. of Corr. & Community Supervision, 197 AD3d 1495, 1495-1496 [3d Dept 2021]; Executive Law § 259-c [4]; 9 NYCRR 8002.2 [a]). The Board was free to place particular emphasis, as it did, on the violent nature of the crimes (see Matter of Schendel v Stanford, 185 AD3d 1365, 1366 [3d Dept 2020]; Matter of Applegate v New York State Bd. of Parole, 164 AD3d 996, 997 [3d Dept 2018]), but "did not base its determination solely upon the seriousness of the offenses" (Matter of Campbell v Stanford, 173 AD3d 1012, 1016 [2d Dept 2019], lv dismissed 35 NY3d 963 [2020]). In addition, the Board's decision sufficiently set forth in detail the basis for the denial of parole (see Executive Law § 259-i [2] [a] [i]; 9 NYCRR 8002.3 [b]). As the Board's decision denying parole does not evince "irrationality bordering on impropriety," nor was it "arbitrary or capricious" (Matter of Silmon v Travis, 95 NY2d 470, 476 [2000] [internal quotation marks and citation omitted]), we find that Supreme Court properly dismissed the challenge to the Board's decision (see Matter of Hibbert v New York State Div. of Parole, 219 AD3d at 1040; Matter of Pulliam v Board of Parole-Dept. of Corr. & Community Supervision, 197 AD3d at 1496; Matter of Schendel v Stanford, 185 AD3d at 1366-1367).
Further, we discern no error in the Board's consideration of the SCI dismissed in 2004 which had charged lesser crimes for the same criminal conduct, a dismissal based solely on a defective waiver of indictment which resulted in the indictment upon which he was convicted after trial. The criminal action was not terminated in petitioner's favor after the plea to the SCI was vacated and the SCI dismissed, as the felony complaints were then reinstated and he was indicted on charges stemming from the felony complaints, and the Board did not err in considering the official records relating to that SCI, which were not required to be sealed (see CPL 160.50 [1], [3] [f]; see also CPL 1.20 [1], [16] [c]). Moreover, the Board's decision does not reflect that the dismissed SCI played any part in its denial of parole, which was based upon the charges for which he was convicted following trial and the relevant statutory factors (see Matter of Gardiner v New York State Div. of Parole, 48 AD3d 871, 872 [3d Dept 2008]).[FN6] Likewise, the record belies petitioner's claim that the Board improperly consider his dismissed marihuana-related conviction, as the Board made no reference to that conviction in its decision, the Board's report made no mention of it and it was redacted from the 2004 sentencing minutes. Although the Board misstated the degree of petitioner's crime, the error was in his favor in that the Board stated it to be attempted murder in the second degree when he was convicted following a trial of attempted murder in the first degree. In any event, the misstatement was corrected on administrative appeal, where the Board noted that this was a "typographical [*5]error" that did not affect the decision.
Petitioner's claims that the Board improperly considered confidential letters from the 2004 sentencing judge and another criminal court judge in the community familiar with petitioner are incorrect. "Executive Law § 259-i (2) (c) (A) does not purport to define the exclusive universe of all information which may be considered" by the Board (Matter of Applewhite v New York State Bd. of Parole, 167 AD3d 1380, 1381 [3d Dept 2018] [internal quotation marks and citation omitted], appeal dismissed 32 NY3d 1219 [2019]) and recommendations from the sentencing court are expressly required by statute to be considered, as the petition acknowledges (see Executive Law § 259-i [2] [c] [A]; 9 NYCRR 8002.2 [d] [7]). Community opposition may also be considered, which is confidential (see Matter of Applewhite v New York State Bd. of Parole, 167 AD3d at 1381-1382; see also Executive Law § 259-i [2] [c] [B]; 9 NYCRR 8000.5 [c] [2]), and the record does not in any respect suggest that the Board "disproportionately relied upon community opposition to [petitioner's] release" (Matter of Campbell v Stanford, 173 AD3d at 1016).
We turn to petitioner's claim that he was entitled to the assignment of counsel on his administrative appeal of the parole denial determination. Parole is a creature of statute and consideration therefor does not require a full adversarial hearing (see Matter of Briguglio v New York State Bd. of Parole, 24 NY2d 21, 26, 28 [1969]). While an incarcerated individual seeking to appeal the denial of parole release "may be represented by an attorney" upon administrative review (Executive Law § 259-i [4] [b]; see 9 NYCRR 8006.2 [d]), there is no constitutional right to be assigned such representation (see Matter of Briguglio v New York State Bd. of Parole, 24 NY2d at 29; Matter of Banks v Stanford, 159 AD3d 134, 144 [2d Dept 2018]), unlike for a parole revocation hearing (see Executive Law § 259-i [3] [f] [v]; [4] [b]; People ex rel. Menechino v Warden, Green Haven State Prison, 27 NY2d 376, 383 [1971]; see also Matter of Lopez v Evans, 25 NY3d 199, 205 [2015]). A procedure is in place for incarcerated individuals who are unable to afford retained counsel to obtain assigned counsel for parole proceedings, but petitioner declined to follow that procedure (see DOCCS Directive No. 8631 [III] [b] [1]).
With regard to petitioner's motion for sanctions and various other relief including access to confidential documents, Supreme Court properly denied the motion while allowing him additional time to file a reply, and we affirm for the reasons stated. Initially, petitioner waived his right to attend his parole interview and it does not appear from the record that he requested these confidential documents in advance of his hearing or in his lengthy administrative appeal; as a result, the Board did not address these claims, which were also not asserted in his petition and were first raised in petitioner's motion. Thus, these [*6]claims are unpreserved for our review (see Matter of Wade v Sanford, 148 AD3d 1487, 1488-1489 [3d Dept 2017]). In any event, "the Board is entitled to designate certain parole records as confidential" (id. at 1489; see Executive Law § 259-k [2]) and the confidential documents in issue that were submitted for in camera consideration were exempt from disclosure, including the PSR, the unredacted COMPAS instrument [FN7] and letters from the sentencing court and another judge in the community familiar with petitioner's history (see Public Officers Law § 87 [2] [a], [f]; 9 NYCRR 8000.5 [c] [2] [i], [ii]; [d]; Matter of Justice v Commissioner of the N.Y. State Dept. of Corr. & Community Supervision, 130 AD3d 1342, 1343 [3d Dept 2015]; Matter of Arlequin v Travis, 277 AD2d 576, 576 [3d Dept 2000]). Petitioner's remaining claims have been considered and found to be without merit.
Garry, P.J., Aarons, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: Petitioner was acquitted on other attempted murder and attempted assault charges.

Footnote 2: Although respondents' brief indicates that petitioner was scheduled to reappear before the Board for a parole hearing in August 2023, publicly available information reflects that his next parole interview is in February 2024.

Footnote 3: The 2019 resentencing focused solely on the attempted assault in the first degree conviction in that the determinate sentence had been imposed in 2004 without a period of PRS, and did not address, on the record, the remaining sentences.

Footnote 4: Petitioner's related argument that, due to the purported invalidity of some of his sentences, DOCCS incorrectly calculated his parole eligibility date as December 16, 2021, rather than earlier, is now moot, as that date has passed and relief in the form of an earlier hearing is not possible. In any event, Supreme Court properly rejected this claim on the merits.

Footnote 5: Petitioner's claim that the PSR contains incorrect information can only be addressed by the sentencing court (see Matter of Delrosario v Stanford, 140 AD3d 1515, 1516 [3d Dept 2016]; see also Matter of Champion v Dennison, 40 AD3d 1181, 1182 [3d Dept 2007], lv dismissed 9 NY3d 913 [2007]).

Footnote 6: Respondents represented in Supreme Court that the information related to the dismissed SCI has been removed from petitioner's file and will not be considered in future parole hearings.

Footnote 7: Petitioner was provided with a redacted copy of the COMPAS instrument.